Filed 6/22/22  P. v. Licona CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B313850 |
| Plaintiff and Respondent, | (Super. Ct. No. 2020005053) (Ventura County) |
| v. | |
| ROSENDO GOMEZ LICONA, | |
| Defendant and Appellant. | |

Rosendo Gomez Licona appeals a judgment following conviction of four counts of sexual intercourse with a child 10 years old or younger, one count of oral copulation with a child 10 years old or younger, eight counts of lewd act on a child under the age of 14 years with a multiple victim finding, and one count of a lewd act on a child who was 14 or 15 years old.  (Pen. Code, §§ 288.7, subds. (a) & (b), 288, subd. (a), 667.61, subd. (e)(4), 288, subd. (c)(1).)[1]

---

[1] All statutory references are to the Penal Code unless otherwise stated.

This appeal concerns 14 sexual offenses that Licona committed against two of his girlfriend's young daughters. Licona raises three evidentiary claims and also challenges imposition of fines, over objection, pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157. We reject his arguments but order the minute orders and abstract of judgment amended to correct a misleading description of four counts of sexual intercourse with a child under the age of 10 years. (§ 288.7, subd. (a).) We otherwise affirm.

*FACTUAL AND PROCEDURAL HISTORY*

Maria P. and her five minor children, including Jane Doe 1 and Jane Doe 2, lived in an apartment in Ventura. Licona dated Maria P. and later moved into the apartment with the family.

When Jane Doe 1 was 11 or 12 years old, Licona began to touch her breasts and buttocks. He also touched her groin area over her underwear. On two occasions, Licona took Jane Doe 1's hand and placed it inside his pants on his penis. The molestations occurred generally between December 2009 and December 2012, a three-year period. Following the final touching, when Jane Doe 1 was 14 years old, she telephoned the police department and reported the molestations (counts 9 through 14).

Jane Doe 2 testified that on one occasion, she saw Licona "hump[]" Jane Doe 1 as she was sleeping. Maria P. also testified that she saw Licona attempt to touch Jane Doe 1's chest as he closed a nearby window. Licona admitted to his coworker that he had touched Jane Doe 1's breasts.

Jane Doe 2 testified that when she was 10 years old or younger, Licona had sexual intercourse with her. This occurred on four occasions in his rented room in Oxnard. He also forced

2

her to orally copulate him another time in the bathroom of the family home.  On another occasion, Licona touched her nude body as she bathed, and at other times rubbed her thigh.  Jane Doe 2 then began to shower while clothed.  These sexual assaults generally occurred from July 2009 through July 2012.  Jane Doe 2 eventually reported the sexual assaults to a Ventura police officer who mentored her youth sports program (counts 1 through 8).

At trial, Doctor Veronica Thomas testified concerning the Child Sexual Abuse Accommodation Syndrome (CSAAS).  She stated that a child may delay disclosure of abuse and may also falsely deny abuse to avoid responsibility for consequences that others may suffer from disclosure.  Thomas also explained the five components of CSAAS:  secrecy, helplessness, accommodation, disclosure, and recantation.  She testified that CSAAS is "not a diagnosis and . . . not a medical syndrome in any way."

Licona questioned Thomas regarding the early history of CSAAS.  Thomas responded that Doctor Roland Summit first published his CSAAS theories in 1982 or 1983, and asserted, "[C]hildren don't lie about this.  It's always true."  Licona did not object to this response.  Thomas continued and later stated that Summit emphasized that CSAAS could not be used to determine whether a child had been abused.

The jury convicted Licona of four counts of sexual intercourse with a child 10 years old or younger, one count of oral copulation with a child 10 years old or younger, eight counts of lewd act on a child under the age of 14 years with a multiple victim finding, and one count of a lewd act on a child who was 14 years old.  (§§ 288.7, subds. (a) & (b), 288, subd. (a), 667.61, subd.

3

(e)(4), 288, subd. (c)(1).)  The trial court sentenced Licona to a determinate term of 20 years plus an indeterminate term of 115 years to life.  Over defense objection, it also imposed a $4,050 restitution fine, a $4,050 parole revocation restitution fine (suspended), and a $27,200 sex offender fine, among others. (§§ 1202.4, subd. (b), 1202.45, 290.3.)  The court awarded Licona 589 days of presentence custody credit.

Licona appeals and contends that the trial court erred by: 1) permitting details of Jane Doe 1's fresh complaint; 2) excluding evidence of his denials made during a pretext telephone call; 3) admitting evidence of CSAAS; and 4) imposing $58,450 fines and penalty assessments.  In arguing that the errors were prejudicial, Licona points to inconsistencies in the testimonies of the victims and their mother as well as the likelihood of faded memories and the mother's desire for revenge.  He also argues denial of his constitutional rights pursuant to the federal and state constitutions.

*DISCUSSION*

*I.*

Licona asserts that the trial court erred by admitting details, over defense objection, of Jane Doe 1's fresh complaint made to her mother.  Maria P. testified that Jane Doe 1 reported that Licona touched her back and shoulders and perhaps her breasts.  (Maria P. was unsure about the touching of breasts and could not recall.)  Licona argues that Maria P. was limited to testifying that Jane Doe 1 reported that he "touched" her, without more.  He contends the error is prejudicial pursuant to any standard of review and denied him due process of law and a fair trial.

4

We review the trial court's exercise of discretion in admitting or excluding evidence for an abuse of discretion, i.e., whether the court exercised its discretion in an arbitrary, capricious, or patently absurd manner resulting in a miscarriage of justice.  (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

In *People v. Brown* (1994) 8 Cal.4th 746, 749-750, our Supreme Court defined the fresh complaint doctrine as:  "[P]roof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purpose – namely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to others – whenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred."  The fact of complaint does not include details of the incident, but does include evidence demonstrating the complaint related to the matter being inquired into and was not a complaint foreign to the subject.  (*Id.* at p. 756.)  Consequently, "*the alleged victim's statement of the nature of the offense and the identity of the asserted offender, without details, is proper.*" (*People v. Burton* (1961) 55 Cal.2d 328, 351.)

The trial court did not abuse its discretion by admitting Jane Doe 1's statements to Maria P. as a fresh complaint.  Jane Doe 1 identified her sexual offender and the nature of the sexual offenses committed without details or further description. (*People v. Burton, supra,* 55 Cal.2d 328, 352 [rejection of argument of inadmissible detail that defendant forced victim to play with his penis].)  Jane Doe 1 provided no more details on each act beyond those necessary to identify the particular sexual acts committed.  That is, she provided a "statement of the

5

asserted fact without any further description." (*Id.* at p. 352.) Testimony to the bare fact that the victim made a complaint as to an unspecified subject matter "on its face would be meaningless." (*Id.* at p. 351.) Admission of the complaint here does not exceed the limits of the fresh complaint rule.

## II.

Licona contends that the trial court prejudicially erred by excluding defense evidence that he denied accusations made during a police-arranged pretext telephone call with Jane Doe 1. He claims the exclusion denied him a fair trial and due process of law.

The trial court did not err by sustaining the prosecutor's objection to this evidence because the evidence was offered for the truth of the matter asserted therein and constituted inadmissible hearsay. (Evid. Code, § 1200, subd. (a); *People v. Grimes* (2016) 1 Cal.5th 698, 710-711 [general rule regarding hearsay evidence].) The denial also was not offered against Licona, the declarant, as required by Evidence Code section 1220. (*People v. Williamson* (1977) 71 Cal.App.3d 206, 214.)

Exclusion of this evidence did not deny Licona the right to present a defense. A defendant's right to present evidence is not unlimited and is subject to reasonable restrictions. (*United States v. Scheffer* (1998) 523 U.S. 303, 308 (plur. opn. of Thomas, J.); *People v. Wolfe* (2018) 20 Cal.App.5th 673, 691.) Application of evidentiary rules do not abridge an accused's right to present a defense as long as they are not arbitrary or disproportionate to the purposes they are designed to serve. (*Ibid.*)

Moreover, a hearsay statement remains hearsay even if the statement is summarized rather than quoted. (*People v. Sanchez* (2016) 63 Cal.4th 665, 694.) "[T]estimonial statements do not

6

become less so simply because [a witness] summarizes a verbatim statement." (*Ibid.*)

For the first time on appeal, Licona asserts that his denials had independent significance and were admissible for nonhearsay purposes, similar to a fresh complaint or a contractual acceptance. He has forfeited this argument, however, because he did not raise it in the trial court. (*People v. Jones* (2017) 3 Cal.5th 583, 603 [refusing to address new theory of admissibility for evidence excluded at trial].)

*III.*

Licona argues that the trial court committed prejudicial error by admitting CSAAS evidence over defense objection. He asserts that the evidence was more prejudicial than probative pursuant to Evidence Code section 352, and Thomas's testimony exceeded the scope of CSAAS evidence. Licona contends that the error denied him due process of law and a fair trial.

The trial court did not abuse its discretion by admitting CSAAS evidence. California courts have consistently admitted CSAAS evidence in sexual abuse cases. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301; *People v. Munch* (2020) 52 Cal.App.5th 464, 466 ["CSAAS evidence is a valid and necessary component of the prosecution case in matters involving child abuse"].) We recently rejected claims similar to those made here in *Munch* (*id.* at p. 468), and *People v. Gonzales* (2017) 16 Cal.App.5th 494, 503-504. Here the CSAAS evidence was relevant to explain the victims' delay in reporting the molestations. CSAAS evidence "is admissible to rehabilitate . . . witness's credibility when the defendant suggests that the child's conduct after the incident is inconsistent with her testimony claiming molestation." (*Gonzales*, at p. 503.)

7

Moreover, Licona did not object to Thomas's historical testimony that he elicited regarding CSAAS – that Summit believed that "children don't lie about [sexual abuse]." He has forfeited this particular argument.

*IV.*

Licona contends that the trial court abused its discretion by imposing a $4,050 restitution fine and a $27,200 sex offender fine, plus penalty assessments, over his objection pursuant to *People v. Dueñas*, *supra*, 30 Cal.App.5th 1157. He claims that the court did not consider his inability to pay prior to imposing the fines.[2]

The proper framework for analysis of an excessive and punitive fines argument is the Eighth Amendment. (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1067-1072 [analysis of asserted punitive fines pursuant to excessive fines clause].) In considering whether a fine is constitutionally disproportionate, the trial court must consider the defendant's culpability, the relationship between the harm and the penalty, the penalties imposed in similar statutes, and the defendant's ability to pay. (*Id.* at p. 1070.)

Here Licona's fines were not grossly disproportionate to his 14 sexual offenses against two children committed over a period of three years. Licona's prison sentence exceeds 100 years and, by comparison, the amounts of his fines are minor. Any prison wages he may earn are relevant to his ability to pay. (*People v.*

---

[2] The question whether the trial court must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments is presently pending before our Supreme Court in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844.

8

*Aviles*, *supra*, 39 Cal.App.5th 1055, 1076.)  Licona appears to be able-bodied and was employed as a construction worker prior to his incarceration.  He also admitted to the trial court at sentencing that he had paid his retained attorney $27,000 to represent him at trial.  In light of these circumstances, the fines imposed are not constitutionally excessive.

*V.*

Licona requests that we direct the correction of minute orders and abstract of judgment to eliminate any reference to "sodomy" regarding counts 1 through 4, because his actions involved sexual intercourse, not sodomy.  The Attorney General agrees.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186 [transcript of oral proceedings prevails over minute order or abstract of judgment].)  Accordingly, we order the trial court to correct the minute orders and abstract of judgment to delete any reference to sodomy.

*DISPOSITION*

The trial court shall correct the minute orders and abstract of judgment to delete any reference to "sodomy" regarding counts 1 through 4, and forward the amended documents to the Department of Corrections and Rehabilitation.  We otherwise affirm the judgment.

<u>NOT TO BE PUBLISHED.</u>



GILBERT, P. J.

We concur:


YEGAN, J.          PERREN, J.


9

Anthony J. Sabo, Judge

Superior Court County of Ventura

_____


Matthew Alger, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.